UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD JONES, JOHN CAYANNE AND JIM GLASSCOCK,<br><br>**Plaintiffs,**<br><br>v.<br><br>MICHAEL KEITZ, SHERIFF JOHN ANDERSON, ROBERT BLEHM, MADERA COUNTY SHERIFF'S DEPARTMENT, MADERA COUNTY, DOES 1 TO 100, INCLUSIVE,<br><br>**Defendants.** | 1:16-cv-01725-LJO-EPG<br><br>**MEMORANDUM DECISION AND ORDER GRANTING DEEFENDANTS' MOTIONS TO DISMISS**<br><br>**(ECF No. 8.)** |

## I. INTRODUCTION

Plaintiffs Ronald Jones, John Cayanne, and Jim Glasscock (collectively, "Plaintiffs") file this action against Defendants Michael Keitz ("Keitz"), John Anderson ("Anderson"), Robert Blehm ("Blehm"), County of Madera and County of Madera Sheriff's Department (collectively, "County Defendants"), and Does 1 to 100 (collectively, "Defendants"). This action arises out of an altercation that occurred at the Chukchansi Gold Resort and Casino ("Casino") in Coarsegold, California and which resulted in Plaintiffs' arrest and criminal prosecution.

Plaintiffs bring a federal claim pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging false arrest and malicious prosecution under the Fourth and Fourteenth Amendments, as well as various state law claims. Now before the Court is Defendants' motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

1

**A.** **Procedural Background**

Plaintiffs filed a Complaint in this Court on November 14, 2016. (ECF No. 1.) Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 with respect to Plaintiffs' federal law claims, and this Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this Court.

The Complaint sets forth four causes of action as to all Defendants: (1) violation of the Fourth and Fourteenth Amendments pursuant to § 1983 (first cause of action); (2) violation of privacy and defamation pursuant to California law (second cause of action); (3) malicious prosecution under California law (third cause of action); and (4) interference with economic relation under California law (fourth cause of action). (*Id.*)

Defendants moved to dismiss all causes of action stated against them. (ECF No. 8.) Plaintiffs opposed the motion. (ECF No. 10.) Defendants submitted a reply. (ECF No. 12.) The matter is now ripe for review.

**B.** **Factual Allegations**

On October 9, 2014, Plaintiffs were sworn by Chief John Oliveira as members of the Chukchansi Tribal Police Department of the Picayune Rancheria of the Chukchansi Indians in Coarsegold, California ("Tribal Police"). (Compl. ¶ 17.) Plaintiffs were asked to search for an audit required by the National Indian Gaming Commission ("NIGC") at the Casino. (*Id.* ¶ 18.) According to the Complaint, the audit was in the possession of a "hostile" faction of the tribe that was occupying the offices of Tribal Gaming Commission. (*Id.* ¶ 20.)

On October 9, 2014, Plaintiffs and seven other members of the Tribal Police went to the Casino to obtain a copy of the audit. (*Id.* ¶ 21.) They were confronted by private security guards employed by a company named Security Training Concepts ("STC") and hired by the "hostile" faction of the tribe. (*Id.*) The Tribal Police detained and arrested several STC security guards and asked the Madera County

Sheriff's Department to remove them from the premises. (*Id.* ¶ 23.) Sheriff Anderson responded to the request, removed the security guards from the premises, and released them outside the Casino. (*Id.* ¶¶ 24, 26.) Anderson made no attempt to arrest or obstruct Plaintiffs. (*Id.* ¶ 25.) The security guards returned to the Casino shortly after their release and assaulted Plaintiffs. (*Id.*)

On October 31, 2014, Madera County District Attorney Keitz "acting at the direction of Sheriff Anderson" filed a criminal complaint against the Plaintiffs related to the October 9, 2014 incident, alleging twenty-seven felony counts, including kidnapping, false imprisonment, assault with a firearm, and illegal use of a stun gun. (*Id.* ¶ 27.) Plaintiffs were arrested and required to post bail "[s]hortly thereafter." (*Id.*) Those charges were ultimately dropped. (*Id.*)

Plaintiffs allege that Defendants knew that the charges being brought were baseless, and that Plaintiffs were acting pursuant to lawful tribal authority when they detained the STC security guards. (*Id.* ¶¶ 28, 29.)

### III. STANDARD OF DECISION

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim. "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**IV. DISCUSSION**

**A.      42 U.S.C. § 1983: Malicious Prosecution**

To state a claim under § 1983, plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City*

4

*of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). In order to prevail on a § 1983 claim of malicious

prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without

probable cause, and that they did so for the purpose of denying [him] equal protection or another

specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

### 1.    **Defendant Keitz**

Defendants contends that Keitz cannot be subject to liability under § 1983 for malicious

prosecution because he is entitled to absolute immunity. (ECF No. 8 at 12.) State prosecutors are entitled

to absolute prosecutorial immunity for acts taken in their official capacity. *See Imbler v. Pachtman*, 424

U.S. 409, 427, 430-31 (1976); *Gobel v. Maricopa County*, 867 F.2d 1201, 1203 (9th Cir. 1989).

"In determining whether absolute immunity is available for particular actions, the courts engage

in a 'functional' analysis of each alleged activity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3rd Cir.

1992). In *Schlegel v. Bebout*, 841 F.2d 937, 943-44 (9th Cir. 1988), the Ninth Circuit Court of Appeals

provided guidance to determine the scope of prosecutorial immunity:

> Our inquiry must center on the nature of the official conduct challenged,
> and not the status or title of the officer. As a result, we must examine the
> particular prosecutorial conduct of which [plaintiff] complains. If we
> determine that the conduct is within the scope of [defendants'] authority
> and is quasi-judicial in nature, our inquiry ceases since the conduct would
> fall within the sphere of absolute immunity.
>
> To determine whether conduct of a state official is within his or her
> authority, the proper test is not whether the act performed was manifestly
> or palpably beyond his or her authority, but rather whether it is more or
> less connected with the general matters *committed* to his or her control or
> supervision . . . .
>
> Absolute immunity depends on the function the officials are performing
> when taking the actions that provoked the lawsuit. We must look to the
> nature of the activity and determine whether it is "intimately associated
> with the judicial phase of the criminal process." . . . Investigative or
> administrative functions carried out pursuant to the preparation of
> a prosecutor's case are also accorded absolute immunity. (Emphasis in
> original; citations omitted.)

The classification of the challenged acts, not the motivation underlying them, determines

whether absolute immunity applies. *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986) (en banc).

Prosecutors and other eligible government personnel are absolutely immune from § 1983 liability in connection with challenged activities related to the initiation and presentation of criminal prosecutions. *Imbler*, 424 U.S. 409; *see also Kalina v. Fletcher*, 522 U.S. 118 (1997); *Roe v. City of S.F.*, 109 F.3d 578, 583 (9th Cir. 1997); *Gobel*, 867 F.2d at 1203.

"[A]bsolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were performed as part of the prosecutor's preparation of his case, even if they can be characterized as 'investigative' or 'administrative.'" *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984), *cert. denied*, 469 U.S. 1127 (1985). A prosecutor is absolutely immune when making a decision to initiate a prosecution "even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki*, 969 F.2d at 1463-64. Immunity extends to "the preparation necessary to present a case," including "obtaining, reviewing, and evaluation of evidence." *Kulwicki*, 969 F.2d at 1465 (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1414 (3rd Cir. 1991)).

Absolute prosecutorial immunity applies even if it leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427. Even charges of malicious prosecution, falsification of evidence, coercion of perjured testimony and concealment of exculpatory evidence will be dismissed on grounds of prosecutorial immunity. *See Stevens v. Rifkin*, 608 F. Supp. 710, 728 (N.D. Cal. 1984). Further activities intimately connected with the judicial phase of the criminal process include making statements that are alleged misrepresentations and mischaracterizations during hearings and discovery and in court papers, *see Fry v. Melaragno*, 939 F.2d 832,837-38 (9th Cir. 1991), and conferring with witnesses and allegedly inducing them to testify falsely, *see Demery*, 735 F.2d at 1144.

The Complaint alleges that Defendant Keitz met with the Tribal Police before the altercation at the Casino and that "Keitz did not tell them not to act." (Compl. ¶ 29.) The Complaint then, without any supporting factual detail, concludes that Defendant Keitz, "falsely and maliciously prosecuted criminal

actions." (Compl. ¶ 32.) This legal conclusion is not entitled to any weight in assessing the sufficiency of the Complaint. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The bare factual allegation that Keitz met with Plaintiffs and "did not tell them not to act" is insufficient to allege that Keitz was not acting in his official capacity in initiating the prosecution. The Complaint does not allege that Keitz was acting outside his authority and therefore he is entitled to absolute prosecutorial immunity. *Imbler*, 424 U.S. at 430-31. As such, the Complaint's § 1983 claim against Defendant Keitz is barred.

### 2. **Defendants Anderson and Blehm**

Defendant argues that Plaintiffs fail to state a claim as to law enforcement officers Anderson and Blehm for malicious prosecution.[1] The Ninth Circuit has long recognized that "[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) ("*Smiddy I*"), *overruled on other grounds by Beck v. City of Upland,* 527 F.3d 853, 865 (9th Cir. 2008). . The plaintiff bears the burden of producing evidence to rebut such presumption. *Newman v. County of Orange,* 457 F.3d 991, 993-95 (9th Cir. 2006).

The Ninth Circuit has explained that "[t]he presumption can be overcome, for example, by evidence that the officers knowingly submitted false information or pressured the prosecutor to act contrary to her independent judgment."*Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986), *opinion modified on denial of reh'g*, 811 F.2d 504 (9th Cir. 1987) ("*Smiddy II*"); *see also Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988) (evidence that police officers provided prosecutor with only a police report containing "striking omissions" indicated that the officers "procured the filing of the

---

[1] Defendants frame their argument for dismissal as an issue of qualified immunity. (ECF No. 11.)  However, the question of whether Plaintiffs alleged facts to rebut the presumption of prosecutorial independence actually goes to whether Plaintiffs failed to state a claim. *See Mitchell v. City of Henderson*, No. 2:13-CV-01154-APG, 2015 WL 427835, at *16 (D. Nev. Feb. 2, 2015).

criminal complaint by making misrepresentations to the prosecuting attorney" and was sufficient to overcome the presumption). In contrast, the Ninth Circuit has clarified that a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). When a plaintiff pleads no evidence to rebut the presumption of prosecutorial independence, dismissal is appropriate. *Smiddy II*, 803 F.2d at 1471.

Plaintiffs allege that "[t]here was tampering with a surveillance camera" (although they do not specify by whom), and that "the investigation and the subsequent criminal complaint were a sham." (Compl. ¶ 29.) Plaintiffs also state that Defendant Keitz was a former deputy of Defendant Anderson and that Keitz was "acting at the direction of Anderson" when he filed criminal charges. (*Id.* ¶¶ 27, 29.) These vague insinuations fall far short of alleging that either Anderson or Blehm pressured the prosecutor to press charges, supplied false information to the prosecutor, withheld relevant information from the prosecutor, or otherwise persuaded the prosecutor to act contrary to his independent judgment.[2] *Smiddy II*, 803 F.2d at 1471. In short, Plaintiffs have made no allegations in the Complaint that, if true, would rebut the *Smiddy* presumption of prosecutorial independence. Therefore, Plaintiffs have not stated a claim under § 1983 based on malicious prosecution against either Defendant Anderson or Defendant Blehm.

### 3.    *Monell* **Liability as to County Defendants**

Defendant argues that Plaintiffs have not pled a *Monell* claim against the County Defendants. (ECF No. 8 at 12-13.) A municipality cannot be held liable under § 1983 for the actions of its employees under the theory of *respondeat superior. See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To state a claim against a public entity under *Monell*, a plaintiff must plead "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3)

---

[2] Indeed, the Complaint makes no specific allegations about Blehm related to the false arrest or malicious prosecution allegations at all. The only factual allegation in the complaint about Blehm is related to the second cause of action, which alleges that he "contacted the Bureau of Indian Affairs requesting information about plaintiffs and their employer." (Compl. ¶ 42.)

1 that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the

2 policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d

3 892, 900 (2011) (internal quotation marks and citations omitted). The policy must be the result of a

4 decision of a person employed by the entity who has final decision or policy making authority. *Monell*,

5 436 U.S. at 694.

6        Defendants move to dismiss on the ground that the Complaint fails to allege adequately a *Monell*

7 claim against County Defendants. (ECF No. 8 at 12-13.) The Complaint contains four paragraphs

8 outlining County Defendants' allegedly unconstitutional customs and policies, all of which are attributed

9 to the Madera County Sheriff's Department. (Compl. ¶¶ 36-39.) The majority of these alleged customs

10 and policies contain only legal conclusions such as that County Defendants "maintained policies or

11 customs exhibiting deliberate indifference to the constitutional rights of persons in County of Madera"

12 (*id.* ¶ 36) and that the County Defendants' "policies and customs demonstrated a deliberate indifference

13 on the part of the policymakers of the County of Madera to the constitutional rights of persons within the

14 County" (*id.* ¶ 39). These allegations are supported by no facts that would tend to plausibly suggest the

15 County Defendants had any unconstitutional custom or policy or failed to train or supervise its

16 employees. A conclusory allegation regarding the existence of a policy or custom unsupported by

17 factual allegations is insufficient to state a *Monell* claim. *See Save CCSF Coal v. Lim*, No. 14-CV-

18 05286-SI, 2015 WL 3409260, at \*13 (N.D. Cal. May 27, 2015) (unspecific allegation regarding

19 municipal defendant's use of force policy insufficient to identify a relevant policy or custom under

20 *Monell*); *Telles v. City of Waterford*, No. 1:10-cv-00982, 2010 WL 5314360, at \*4 (E.D. Cal. Dec. 20,

21 2010) (to sufficiently state a claim under *Monell*, plaintiff must allege facts establishing a policy, it is

22 not enough simply to state that there is a policy); *Jenkins v. Humboldt County*, No. C 09-5899, 2010 WL

23 1267113, at \*3 (N.D. Cal. Mar. 29, 2010) (same); *Smith v. Stanislaus*, No. 1:11-CV-01655-LJO, 2012

24 WL 253241, at \*3-4 (E.D. Cal. Jan. 26, 2012) (same). These generic allegations are therefore

25 insufficient to sustain a claim against County Defendants under *Monnell*.

26

Plaintiffs also allege that the County Defendants had a policy of "inadequately and improperly train[ing] sheriff's department personnel regarding the concurrent jurisdiction required by federal law." (Compl. ¶ 27.) Plaintiffs suggest that this policy led to "deputies illegally ignor[ing] the Tribal authority and their legal duty." (ECF No. 10 at 7.) Assuming, without deciding, that Plaintiffs have identified a policy or custom, Plaintiffs have not alleged that the failure to train demonstrated deliberate indifference to Plaintiffs' constitutional rights, nor that the failure to train was the moving force behind the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 392 (1989) (a city is not liable under § 1983 for failure to train unless the failure reflects deliberate indifference to the constitutional rights of its inhabitants and is the moving force behind the constitutional violation).

The Complaint fails to allege sufficient facts to support a finding that County Defendants were deliberately indifferent because it does not allege any prior similar incidents. *See Connick v. Thompson*, 563 U.S. 51, 63-64 (2011). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train,' though there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.'" *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting *Connick*, 131 S. Ct. at 1360-61). In this "narrow range of circumstances," a single incident may suffice to establish deliberate indifference where the violation of constitutional rights is a "highly predictable consequence" of a failure to train because that failure to train is "so patently obvious." *Connick*, 131 S. Ct. at 1361 (discussing *City of Canton*, 489 U.S. 378). In *Connick*, the Court concluded that failure to train liability could not be imposed upon a district attorney's office based upon a single *Brady* violation, concluding that "[t]hat sort of nuance [in training] simply cannot support an inference of deliberate indifference." *Id.* Here, Plaintiffs have not alleged facts showing a pre-existing pattern of constitutional violations stemming from the alleged failure to train officers regarding concurrent jurisdiction. Plaintiffs also have not alleged that the unconstitutional consequences of failing to train officers in concurrent jurisdiction were "patently obvious" such that liability could be predicated

10

1    on a single incident. *Id.*

2           Moreover, Plaintiffs do not make *any* connection between the failure to train Madera County

3    Sheriff's Department personnel regarding concurrent jurisdiction and the resulting alleged malicious

4    prosecution. Plaintiffs' arrests by the Madera County Sheriff's Department took place *after* Plaintiffs

5    were criminally charged by the prosecutor. As explained above, it is "presumed that the prosecutor filing

6    the complaint exercised independent judgment in determining that probable cause for an accused's

7    arrest." *Smiddy I*, 665 F.2d at 266. Plaintiffs have not rebutted this presumption. Therefore, whether the

8    Madera County Sheriff's Department failed to train its officers regarding concurrent jurisdiction in tribal

9    territory is irrelevant to the arrests that took place after the filing of criminal charges by the state. The

10   investigation and subsequent filing of criminal charges by the prosecutor broke the causal chain between

11   any policy or custom of the Sheriff's Department and the allegedly unconstitutional prosecution. *Id.*

12   Plaintiff's vague allegation that "the investigation and the subsequent criminal complaint were a sham"

13   does nothing to explain how County Defendant's alleged failure to train its officers regarding concurrent

14   jurisdiction *caused* Plaintiffs' injuries.

15          Plaintiffs fail to state a claim upon which relief may be granted against Defendants for malicious

16   prosecution under § 1983. Insofar as Plaintiff's first cause of action is based on malicious prosecution, it

17   is DISMISSED WITH LEAVE TO AMEND.

18   **B.     42 U.S.C. § 1983: False Arrest**

19          Plaintiffs also allege that Defendants violated their constitutional rights by arresting them.

20   Defendants counter that Plaintiffs' false arrest claim fails for the same reason their malicious

21   prosecution claim fails.[3]

22   _____

23   [3] Defendant also argues that Plaintiffs' false arrest claim is time barred. A false arrest claim accrues at the time that plaintiff
     becomes subject to legal process. *Wallace v. Kato*, 549 U.S. 384, 397 (2007) ("We hold that the statute of limitations upon a
24   § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by
     criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."). When an arrest
25   takes place pursuant to a criminal complaint, the claim accrues as soon as the arrest takes place. *Id.* at 390 (noting that a false
     arrest claim accrues "once the victim becomes held pursuant to such process—when for example, he is bound over by a

26

Where an arrest occurs after the filing of criminal charges, as Plaintiffs allege here, the arrest

necessarily took place pursuant to legal process and therefore was not a 'false' arrest. *See Wallace v.*

*Kato*, 549 U.S. 384, 389 (2007). As this Court explained in *Miller v. Schmitz*, No. 1:12-CV-00137-LJO,

2012 WL 1609193, at *4-5 (E.D. Cal. May 8, 2012):

> Plaintiff alleges that he was placed under arrest only after a criminal
> complaint and a warrant were issued for his arrest. In other words,
> Plaintiff alleges that his arrest was the result of legal process. Under such
> circumstances, there can be no claim for false arrest; false arrest consists
> of an arrest made *in the absence of* legal process. *Wallace v. Kato*, 549
> U.S. 384, 389 (2007); *Blaxland v. Commonwealth Dir. of Pub.*
> *Prosecutions*, 323 F.3d 1198, 1204-06 (9th Cir. 2003). Where, as here, the
> arrest is made after legal process has been initiated, any challenge to the
> arrest is subsumed by a claim for malicious prosecution. As the Supreme
> Court explained:
>
>> Reflective of the fact that false imprisonment consists of detention
>> without legal process, a false imprisonment ends once the victim
>> becomes held pursuant to such process-when, for example, he is
>> bound over by a magistrate or arraigned on charges. Thereafter,
>> unlawful detention forms part of the damages for the entirely
>> distinct tort of malicious prosecution, which remedies detention
>> accompanied, not by absence of legal process, but by wrongful
>> institution of legal process. If there is a false arrest claim, damages
>> for that claim cover the time of detention up until issuance of
>> process or arraignment, but not more. From that point on, any
>> damages recoverable must be based on a malicious prosecution
>> claim and on the wrongful use of judicial process rather than
>> detention itself.
>
> *Wallace*, 549 U.S. at 389-90 (internal quotation marks and citations
> omitted). *Accord Beck v. City of Upland,* 527 F.3d 853, 861 n.7 (9th Cir.
> 2008) (noting that the claim for "false arrest" was actually a claim for
> malicious prosecution because the plaintiff was arrested only after the
> prosecutor had filed a criminal complaint against the plaintiff); *Wilkins v.*
> *DeReyes,* 528 F.3d 790, 798-99 (10th Cir. 2008) (construing the plaintiff's
> challenge to detention pursuant to an arrest warrant as a claim for

magistrate or arraigned on charges"). Plaintiffs allege that criminal charges were filed on October 31, 2014 and that they were arrested and posted bail "shortly thereafter." (Compl. ¶ 27.) Plaintiffs do not specify exactly when the arrests took place. Defendant suggests that the arrests took place on October 31, 2014, but cite only to the Complaint, which does not support that proposition. (ECF No. 8 at 10.) Defendants offer no other judicially noticeable evidence regarding when the arrests took place. The Court does not have evidence before it to determine whether the arrests took place before November 14, 2014, in which case the statute of limitations on Plaintiffs' false arrest claim expired before Plaintiffs filed their claim on November 14, 2016, or after November 14, 2014, in which case Plaintiffs' claim was timely filed. As such, and drawing reasonable inferences in favor of Plaintiffs, at this stage the Court rejects Defendants' argument that Plaintiffs' false arrest claim is time barred.

malicious prosecution and not false arrest).

Because the arrests alleged in the Complaint took place pursuant to legal process (i.e. the October 31, 2014 filing of the criminal complaint by District Attorney Keitz), Plaintiffs fail to state a claim for false arrest.[4] Plaintiffs' first cause of action under § 1983, insofar as it is based on false arrest, is DISMISSED WITH LEAVE TO AMEND.[5]

## C.    Causes of Action under State Law

Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Notrica v. Bd. of Supervisors of Cty. of San Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991). As discussed above, this Court dismisses the first cause of action, the only federal claim in this lawsuit. Accordingly, this Court DECLINES to exercise supplemental jurisdiction over the second, third, and fourth causes of action alleged against Defendants and will not address them at this time.

## V. CONCLUSION AND ORDER

For the reasons stated above:

1)   Defendants' motion to dismiss the first cause of action to the extent it is brought based on false arrest pursuant § 1983 (ECF No. 8) is GRANTED WITHOUT LEAVE TO AMEND.

Defendants' motion to dismiss the first cause of action to the extent it is brought based on

---

[4] The Supreme Court recently held that legal process does not extinguish a plaintiff's Fourth Amendment rights in a suit brought under § 1983 where plaintiff was arrested pursuant to a warrant issued without probable cause and held pending trial. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919-20 (2017). In that case, the judge issued a warrant for plaintiff's arrest based solely on the false statements of law enforcement. *Id.* The Court determined that plaintiff's claim that his subsequent pre-trial detention violated his Fourth Amendment rights could go forward in spite of the intervening legal process – the judge's determination of probable cause. In this case, the arrest followed the filing of a criminal complaint, (Compl. ¶ 27), and was "subsumed by a claim for malicious prosecution." *Miller*, 2012 WL 1609193, at \*4 (citing *Wallace*, 549 U.S. at 389-90). As explained above, Plaintiffs failed to state a claim for malicious prosecution against the officers because they did not allege facts to rebut the presumption of prosecutorial independence. That analysis applies with equal force to Plaintiffs' false arrest claim, since the arrests took place after the prosecutor's decision to initiate criminal charges. (Compl. ¶ 27.) Therefore, the Supreme Court's holding in *Manuel* is not implicated by the Court's analysis.

[5] Based on the foregoing analysis, the Court doubts that Plaintiffs could cure their false arrest claim through amendment. However, out of an abundance of caution, to the extent that Plaintiffs seeks to assert a separate claim for false arrest notwithstanding the discussion above, the Court will afford Plaintiffs an opportunity to amend their pleadings.

13

malicious prosecution is GRANTED WITH LEAVE TO AMEND.

2) The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Plaintiffs shall have twenty (20) days from electronic service of this Order to file an amended complaint or give notice that she will stand on the current pleading.

The Court has spent a great deal of time researching and citing to the law specific to the legal concerns faced by Plaintiffs in bringing these claims. Plaintiffs are cautioned to read and study the law cited, and to recognize that counsel is an officer of the Court obligated to have facts upon which claims are made. Should Plaintiffs choose to file an amended complaint, these tenets should remain at the forefront of consideration. It is doubtful that a third chance at pleading will be provided.

IT IS SO ORDERED.

Dated:   __**April 17, 2017**__                    _____**/s/ Lawrence J. O'Neill**_____
                                                    UNITED STATES CHIEF DISTRICT JUDGE