**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD JONES, JOHN CAYANNE AND JIM GLASSCOCK, <br><br> **Plaintiffs,** <br><br> v. <br><br> MICHAEL KEITZ, SHERIFF JOHN ANDERSON, ROBERT BLEHM, MADERA COUNTY SHERIFF'S DEPARTMENT, MADERA COUNTY, DOES 1 TO 100, INCLUSIVE, <br><br> **Defendants.** | 1:16-cv-01725-LJO-EPG <br><br> **MEMORANDUM DECISION AND ORDER GRANTING DEEFENDANTS' MOTIONS TO DISMISS** <br><br> **(ECF No. 21)** |

## I. INTRODUCTION

Plaintiffs Ronald Jones, John Cayanne, and Jim Glasscock (collectively, "Plaintiffs") bring this action against Defendants John Anderson ("Anderson"), Robert Blehm ("Blehm"), County of Madera and County of Madera Sheriff's Department (collectively, "County Defendants"), and Does 1 to 100 (collectively, "Defendants"). This action arises out of an altercation that occurred at the Chukchansi Gold Resort and Casino ("Casino") in Coarsegold, California and which resulted in Plaintiffs' arrest and criminal prosecution. Now before the Court is Defendants' motion to dismiss the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).

# II. BACKGROUND

**A.    Procedural History**

Plaintiffs filed the original Complaint ("OC") in this Court on November 14, 2016. (ECF No. 1.) Plaintiffs initially brought a federal claim pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging false arrest and malicious prosecution under the Fourth and Fourteenth Amendments, as well as various state law claims. On April 17, 2017, the Court issued an order ("April 17 Order") dismissing Plaintiffs' § 1983 claim with leave to amend, and declining to exercise supplemental jurisdiction over Plaintiffs' state law claims. (April 17 Order, ECF No. 12.)

Plaintiffs filed an amended complaint on May 26, 2017. (FAC, ECF No. 18.) The FAC sets forth two causes of action as to County Defendants and Defendants Anderson and Blehm: (1) violation of the Fourth and Fourteenth Amendments pursuant to § 1983 (first cause of action); and (2) malicious prosecution under California law (second cause of action). (*Id.*) As in the OC, Plaintiffs allege that their constitutional rights were violated when they were subject to false arrest and malicious prosecution. (ECF No. 26 at 2.) Although Plaintiffs also named former Madera County District Attorney Michael Keitz ("Keitz") in the OC, he is not named as a defendant in the claims contained in the FAC. (FAC at 11-12.)

Defendants moved to dismiss all causes of action stated against them in the FAC. (ECF No. 21.) Plaintiffs opposed the motion. (ECF No. 26.) Defendants submitted a reply. (ECF No. 24.) Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 with respect to Plaintiffs' federal law claims, and this Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this Court. This matter is now ripe for review and is suitable for disposition without oral argument. *See* Local Rule 230(g).

**B.    Factual Background**

On October 9, 2014, Plaintiffs were sworn by Chief John Oliveira as members of the Chukchansi Tribal Police Department of the Picayune Rancheria of the Chukchansi Indians in Coarsegold,

California ("Tribal Police"). (FAC ¶ 16.) Plaintiffs were asked to search for an audit required by the National Indian Gaming Commission ("NIGC") at the Casino. (*Id.* ¶ 17.) According to the Complaint, the audit was in the possession of a "hostile" faction of the tribe that was occupying the offices of Tribal Gaming Commission. (*Id.* ¶ 19.)

Later that day, Plaintiffs and other members of the Tribal Police went to the Casino to obtain a copy of the audit. (*Id.* ¶ 20.) They were confronted by private security guards employed by a company named Security Training Concepts ("STC") and hired by the "hostile" faction of the tribe. (*Id.*) The Tribal Police detained and arrested several STC security guards and asked the Madera County Sheriff's Department to remove them from the premises. (*Id.* ¶ 21.) When Defendant Anderson arrived at the Casino, he told an attorney for the tribe that Plaintiffs' actions in confronting and detaining the STC guards amounted to "kidnapping" under California law. (*Id.* ¶ 22.) The attorney responded that, as Tribal Police, Plaintiffs had authority to detain the STC guards. (*Id.*) Sheriff Anderson removed the security guards from the premises and released them outside the Casino. (*Id.* ¶ 23.)

The security guards returned to the Casino shortly after their release and an altercation ensued between the security guards and Plaintiffs. (*Id.* ¶ 24.) During the course of that incident, one of the STC guards instructed someone to pull the fire alarm even though there was no fire, and someone discharged a taser against one of the Tribal Police. (*Id.*) When the Sheriff's Department officers arrived, they "ignored the illegal activities of the hostile security guards, the false fire alarm, the victim of the Taser, and the deprivations against guests but supported the hostiles." (*Id.* ¶ 25.)

Following the incident, "Sheriff Anderson and his Department . . . mispreresented the facts and evidence ultimately misinforming the District Attorney leading the criminal complaints." (*Id.* ¶ 26.) District Attorney Keitz then filed criminal complaints against Plaintiffs "acting at the direction of Sheriff Anderson." (*Id.* ¶ 29.)

Keitz "advised the public media that the charges were filed after 'careful review' of the evidence and multiple discussions with the Sheriff's department." (*Id.* ¶ 30.) However, the FAC contends that the

3

1  charges "could not have been filed after careful review of the evidence" because "[t]here was not time to

2  do this and the allegations of the complaints are inconsistent with any 'careful review' of the evidence."

3  (*Id.*) Furthermore, the charges were "dismissed by a new district attorney who upon evaluating the

4  complaints reached the conclusion that the actions lacked merit" and who "informed the court that the

5  evidence did not fit the charges." (*Id.* ¶¶ 29-30.) The FAC further intimates that the complaints were

6  clearly wrong since they alleged the same charges against every defendant even though "[t]he evidence

7  showed that the defendants were not all involved in the same incidents, did not carry or use weapons,

8  were not all involved in the handling of other persons and were not all involved in any physical

9  altercation." (*Id.*) Lastly, Plaintiffs allege that Keitz was motivated to charge Plaintiffs because he was

10  up for re-election and there was a perception on social media that he would not be re-elected if he did

11  not press charges. (*Id.* ¶ 32.)

## III. <u>STANDARD OF DECISION</u>

13  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the

14  sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

15  2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the

16  absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

17  *Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which

18  relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading

19  in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's

20  favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

21  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that

22  the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and

23  the grounds upon which it rests." A plaintiff is required to allege "enough facts to state a claim to relief

24  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

25  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

26

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an

unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is

insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it

is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants

have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal.,

Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must

contain either direct or inferential allegations respecting all the material elements necessary to sustain

recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must

describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by

amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the

pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to

amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.

1990) (citations omitted).

**IV. <u>DISCUSSION</u>**

**A.**     <u>42 U.S.C. § 1983: False Arrest</u>

Defendants express concern that the Court's April 17 Order was unclear regarding whether the

cause of action under § 1983 based on a theory of false arrest was dismissed with or without leave to

amend. The Court's intent, as Plaintiffs clearly understood, was to dismiss the Fourth Amendment claim

to the extent it was based on false arrest with leave to amend. (ECF No. at 14 at 13 n.5.)[1] However, the Court cautioned Plaintiffs that it doubted amendment could cure the defect in the claim and indicated that it was allowing Plaintiffs an opportunity to amend the claim only out of "an abundance of caution." (*Id.*) In the FAC, Plaintiffs again bring a cause of action pursuant to § 1983 alleging constitutional violations based on malicious prosecution and false arrest. (ECF No. 26 at 2.) Plaintiffs allege, as they did in the OC, that Plaintiffs were falsely arrested following the filing of a criminal complaint.

As the Court explained in its April 17 Order, to the extent Plaintiffs allege that they were arrested pursuant to the filing criminal complaint, Plaintiffs cannot state a constitutional claim premised on a theory of false arrest. (April 17 Order at 11-12 & n.3, n.4.) Where an arrest occurs after the filing of criminal charges, the arrest necessarily took place pursuant to legal process and therefore was not a "false" arrest. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007). Plaintiffs allege that they were arrested pursuant to judicial process – namely, the filing of a criminal complaint. (FAC ¶ 29.) Plaintiffs' § 1983 claim predicated on false arrest is therefore "subsumed by a claim for malicious prosecution." *Miller v. Schmitz*, No. 1:12-CV-00137-LJO, 2012 WL 1609193, at *4 (E.D. Cal. May 8, 2012) (citing *Wallace*, 549 U.S. at 389-90). Because Plaintiffs have been granted an opportunity to amend the FAC and further amendment would be futile, to the extent Plaintiffs' § 1983 claim is based on false arrest, it is DISMISSED WITHOUT LEAVE TO AMEND.

**B.    42 U.S.C. § 1983: Malicious Prosecution**

To state a claim under § 1983, plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). In order to prevail on a § 1983 claim of malicious

---

[1] In the body of the April 17 Order, the Court explained why the cause of action was dismissed and indicated that it was granting Plaintiffs an opportunity to amend. (April 17 Order at 11-12 & n.3.) In the Conclusion and Order section, the Court erroneously indicated that the cause of action was dismissed without leave to amend. Because Plaintiffs reasserted a § 1983 claim based on false arrest in the FAC, the error was not material.

prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

### 1. **Defendants Anderson and Blehm**

Defendant argues that Plaintiffs fail to state a claim as to law enforcement officers Anderson and Blehm for malicious prosecution. The Ninth Circuit has long recognized that "[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) ("*Smiddy I*"), *overruled on other grounds by Beck v. City of Upland,* 527 F.3d 853, 865 (9th Cir. 2008). The plaintiff bears the burden of producing evidence to rebut such presumption. *Newman v. County of Orange,* 457 F.3d 991, 993-95 (9th Cir. 2006).

The Ninth Circuit has explained that "[t]he presumption can be overcome, for example, by evidence that the officers knowingly submitted false information or pressured the prosecutor to act contrary to her independent judgment." *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986), *opinion modified on denial of reh'g*, 811 F.2d 504 (9th Cir. 1987) ("*Smiddy II*"); *see also Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988) (evidence that police officers provided prosecutor with only a police report containing "striking omissions" indicated that the officers "procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney" and was sufficient to overcome the presumption). In contrast, the Ninth Circuit has clarified that a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). When a plaintiff pleads no evidence to rebut the presumption of prosecutorial independence, dismissal is appropriate. *Smiddy II*, 803 F.2d at 1471.

The Court previously dismissed Plaintiff's § 1983 claim against Anderson and Blehm predicated upon malicious prosecution, concluding that the OC's "vague insinuations fall far short of alleging that

7

either Anderson or Blehm pressured the prosecutor to press charges, supplied false information to the prosecutor, withheld relevant information from the prosecutor, or otherwise persuaded the prosecutor to act contrary to his independent judgment." (April 17 Order at 8.)

In the FAC, Plaintiffs allege that Defendant Anderson "misrepresented the facts and evidence ultimately misinforming the District Attorney leading to the criminal complaints." (FAC ¶ 26.) This allegation is conclusory and therefore not entitled to any weight. *Iqbal*, 556 U.S. at 681 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs also allege, as they did in the OC, that Defendant Keitz was a former deputy of Defendant Anderson and that Keitz was "acting at the direction of Anderson" when he filed criminal charges. (FAC ¶¶ 27, 29.) This allegation likewise provides no facts from which the Court could conclude that Keitz was being controlled by Anderson. The FAC concludes that Anderson misled Keitz or supplied him with false information without providing any *facts* to support its allegations, and therefore fails to overcome the presumption of prosecutorial independence.

With respect to Defendant Blehm, the FAC alleges that he was "one of the lead investigating officers acting under Sheriff Anderson" and that "[h]ad he properly and truthfully carried out this part of the investigation, it would have been clear that plaintiffs were properly acting as a police force under Indian law and authority and no criminal complaints should have issued." (FAC ¶ 37.) Plaintiffs also allege, as they did in the OC, that Blehm contacted the Bureau of Indian Affairs requesting information about Plaintiffs and their employer. (FAC ¶ 37.) Plaintiffs insinuate that Blehm must have been part of a scheme to prosecute them maliciously, but provide no factual allegations to support their conclusion. Indeed, Plaintiffs concede that they "do not know to what extent [Blehm] was involved in the false reporting and investigative railroading." (*Id.*) At most, the allegations suggest that Blehm was part of the team investigating the incident and that he should have concluded based on his investigation that Plaintiffs had not acted unlawfully. These allegations are insufficient to suggest, as they must, that Blehm's actions overcame District Attorney Keitz's independent judgment. *Smiddy II*, 803 F.2d at 1471.

The additional allegations in the FAC regarding Defendants Anderson and Blehm are still insufficient to rebut the *Smiddy* presumption of prosecutorial independence. Plaintiffs' allegations amount to nothing more than threadbare conjecture that Defendants Anderson or Blehm provided the prosecution with misleading information or sought to pressure the prosecutor to act contrary to his independent judgment. Therefore, Plaintiffs do not state a claim under § 1983 based on malicious prosecution against either Defendant Anderson or Defendant Blehm.

### 2. County Defendants

In the FAC, Plaintiffs admit that they "do not have sufficient facts to state a *Monell* claim" but contend that "[t]he County of Madeira [sic] and Department are vicariously liable for the acts of the Sheriff and his officers because the County and Department delegated the authority to the Sheriff and Officers to act and they acted within the course and scope of their delegation." (FAC ¶ 43.)

As the Court explained in its April 17 Order:

> A municipality cannot be held liable under § 1983 for the actions of its employees under the theory of *respondeat superior. See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To state a claim against a public entity under *Monell*, a plaintiff must plead "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (2011) (internal quotation marks and citations omitted). The policy must be the result of a decision of a person employed by the entity who has final decision or policy making authority. *Monell*, 436 U.S. at 694.

(April 17 Order at 8-9.)

Plaintiffs argue in their opposition that Defendant Anderson was "delegated the authority to carry out the acts of the County . . . [t]his allows for a theory of liability against the Municipality without going into the usual *Monell* analysis of policy and practice." (ECF No. 26 at 8.) Plaintiffs' contention that they can state a claim against County Defendants based on a theory of vicarious liability, without pleading a claim under *Monell*, is patently incorrect. As the cases cited by Plaintiffs clearly demonstrate,

9

to state a claim against a municipality, a plaintiff must allege that an unconstitutional policy, custom or practice caused their injuries. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1998). Plaintiffs' assertion that Defendant Anderson can be held vicariously liable because the County delegated decision-making authority to him is contrary to clearly established law. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.") Plaintiffs' failure to identify an unconstitutional policy, practice or custom that caused the alleged injury is fatal to their claim against County Defendants.

Plaintiffs fail to state a claim upon which relief may be granted against Defendants for malicious prosecution under § 1983. Plaintiffs' first cause of action is DISMISSED WITHOUT LEAVE TO AMEND in its entirety as to all Defendants.

**C.** **Causes of Action under State Law**

Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Notrica v. Bd. of Supervisors of Cty. of San Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991). As discussed above, the Court dismisses the first cause of action, the only cause of action brought under federal law in this lawsuit. Accordingly, the Court DECLINES to exercise supplemental jurisdiction over the second cause of action.

# V. **CONCLUSION AND ORDER**

For the reasons stated above:

1) Defendants' motion to dismiss the first cause of action is GRANTED WITHOUT LEAVE TO AMEND;

2) The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state law claim contained in the second cause of action;

3) The Clerk of Court is DIRECTED to close the case

IT IS SO ORDERED.

Dated:   **August 7, 2017**              **/s/ Lawrence J. O'Neill**
                                          UNITED STATES CHIEF DISTRICT JUDGE